ABELE E. GRILLO *v.* ZONING BOARD OF APPEALS
OF THE CITY OF WEST HAVEN ET AL.
(13132)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued December 3, 1987—decision released February 23, 1988

*Leon O. Gross,* for the appellant (plaintiff).

*Mark J. DeGennaro,* deputy corporation counsel, for the appellee (named defendant).

*Mark A. Healey,* with whom, on the brief, was *Vincent R. Falcone,* for the appellee (defendant Jessica F. DeFrank).

SHEA, J. The plaintiff, Abele E. Grillo, has appealed from a judgment upholding the action of the defendant West Haven zoning board of appeals (board) in granting variances of minimum area and street frontage requirements of the West Haven zoning regulations for a lot owned by the defendant Jessica F. DeFrank so that it may be used for the construction of a one-family or two-family dwelling. Grillo claims that the trial court erred in concluding (1) that DeFrank's application for a variance could be considered by the board on its merits when no change in conditions or new considerations had intervened since the board had granted an earlier application concerning the same lot subject to the condition that the property "shall not be treated as an approved building lot," and (2) that there was sufficient evidence of hardship to support the grant of a variance. We find error on the second ground and remand the case with direction to sustain the appeal.

There is no substantial dispute about the facts. In 1946, DeFrank acquired two contiguous rectangular lots, each having a frontage of forty feet on the north

side of Blohm Street in West Haven, a depth of approximately 134 feet, and an area of approximately 5360 square feet. A house was situated wholly within the easterly lot and the remaining lot was used as a side yard for the house. A survey dated May 9, 1957, about ten years before the zoning regulations became effective, shows the entire property as two separate adjoining lots. The assessment records for West Haven indicate that the vacant lot has always been assessed separately from the lot on which the house is situated.

Zoning regulations became effective in West Haven on February 2, 1967. Section 23-3.1 of these regulations established 6000 square feet as the minimum area and § 23-3.3 established fifty feet as the minimum frontage for a building lot in a R3-2 zone, in which the DeFrank property was situated. Each of the lots owned by DeFrank lacked 640 square feet of the area and ten feet of the frontage required for a building lot by these regulations. Section 23-5.1 of the regulations, however, contains "special provisions for existing small lots" that permit a residence to be built upon a lot with less than the prescribed minimum area and frontage if that lot "was owned separately and individually from all other adjoining tracts of land on the effective date" of the zoning ordinance, provided the lot area and frontage equal the average for all lots in the same block.[1]

On August 12, 1982, DeFrank applied for a "special exception" for the vacant lot in order "to sell lot which

[1] Section 23-5.1 of the West Haven zoning regulations provides: "SPECIAL PROVISIONS FOR EXISTING SMALL LOTS

"In all Districts, either one single-family detached residence or, where permitted, one two-family detached or single-family semi-detached residence may be built upon a zoning lot consisting entirely of a tract of land: (a) Which has less than the prescribed minimum lot area or lot width and (b) Which was owned separately and individually from all other adjoining tracts of land on the effective date of this resolution and on the date of application for a building permit, provided that such lot area is equal to the average areas of all lots on the same block and such lot frontage is equal to the average lot frontage of all parcels on the same block."

is less than now required 50 feet frontage and 6000 square feet area." The application referred to § 23-5.1, "special provisions for existing small lots," as the section of the zoning regulations involved and specified, as the hardship claimed, "all lots on street [are] same dimensions or less." The board, however, as its minutes indicate, treated the application as seeking a variance of § 23-5.1 "to sell a lot which is less than the required 50 feet frontage and 6000 square feet." In granting a variance on September 15, 1982, the board imposed the condition that "the property shall not be treated as an approved building lot." As its reason for granting the variance, the board expressed its view "that the applicant suffered from unnecessary hardship and practical difficulties and that the variance requested would have no adverse effect upon neighboring property owners."

This 1982 application was made in relation to discussions between DeFrank and the plaintiff, who owned property adjoining the west side of the vacant lot, about his proposed purchase of the lot for approximately $8000. No such sale, however, was ever consummated. Instead DeFrank applied to the board expressly seeking a variance of § 23-3.1, the minimum lot area requirement, and of § 23-3.3, the minimum frontage requirement. The only hardship claimed in this application was that all other lots on the street were undersized. The board granted this application on May 18, 1983. The plaintiff appealed this action of the board and his appeal was ultimately sustained by the Appellate Court. *Grillo v. Zoning Board of Appeals*, 4 Conn. App. 205, 493 A.2d 275 (1985). The Appellate Court concluded that the minutes of the hearing before the board contained no evidence to support the claim that the lot was valueless if it could not be used as a building lot. Id., 208–209.

On August 20, 1985, DeFrank filed another application with the board in which she sought a variance of

§§ 23-3.1 and 23-3.3. This application made no reference to § 23-5.1, the small lot provision, nor did it mention the "variance" that had been granted in 1982 regarding that provision. As the purpose of the requested variance, the application stated the need for relief from the lot area and frontage requirements because of the status of the lot as an individual building lot prior to zoning "so that the property may become an accepted building lot." DeFrank claimed hardship because the lot had existed as a "single piece" prior to zoning, had been taxed as such, and would be greatly decreased in value unless it could be used as a building lot. At the public hearing DeFrank presented evidence of financial hardship in that the value of the lot, if available for construction of a two-family house, a permitted use within the zone, would be approximately $26,000 as compared with its market value of $5000 on the assessment records. There was also evidence that the plaintiff had offered about $8000 for the lot in 1982 and was still interested in purchasing the lot. The board granted the application, stating only that "hardship was shown."

In his appeal from the granting of the 1985 application, the plaintiff raised both issues pursued before us, the absence of any circumstances justifying removal of the restriction against building imposed when the board granted the 1982 variance and the lack of sufficient evidence of hardship. The trial court held that the action of the board in imposing a building prohibition when the 1982 application was granted did not bar the 1985 application, even without proof of changed circumstances, because each application sought different relief and in the 1982 application, DeFrank "was in effect asking the board to grant a right which she already had." The court also concluded that hardship had been shown because the zoning regulations deprived DeFrank of the ability to build on the vacant lot, as

she could have done before their enactment, and that "the board could have found that because DeFrank could make no reasonable use of the lot, its market value was minimal," being of use only "to enhance the enjoyment of adjacent lots."

I

We agree with the trial court that the restriction against building imposed by the board in granting a variance in 1982, after DeFrank had applied for a "special exception" in respect to § 23-5.1 for the purpose of selling her undersized vacant lot, did not bar consideration of her most recent application for a variance on its merits, as the plaintiff claims. "Ordinarily, an administrative agency cannot reverse a prior decision unless there has been a change of conditions or other considerations have intervened which materially affect the merits of the matter decided." *Malmstrom* v. *Zoning Board of Appeals,* 152 Conn. 385, 390–91, 207 A.2d 375 (1965); *Hoffman* v. *Kelly,* 138 Conn. 614, 616–17, 88 A.2d 382 (1952). "The principle applies, however, only when the subsequent application seeks substantially the same relief as that sought in the former." *Fiorilla* v. *Zoning Board of Appeals,* 144 Conn. 275, 279, 129 A.2d 619 (1957).

The record of the 1982 application of DeFrank for a "special exception" with respect to § 23-5.1 does not disclose the reason why the application was treated by the board as an application for a variance. The zoning regulations do not provide that a special exception must be granted for an owner to avail himself of the benefit of that section, which provides simply that a house may be built on any lot satisfying its requirements. The board does have authority to decide appeals from decisions of building department officials involving interpretations of the regulations, but the record does not reveal any such circumstances relating to the 1982

application. In any event, it is clear that the later applications sought variances in respect to §§ 23-3.1 and 23-3.3, without mention of § 23-5.1. It is also undisputed that the occasion for the 1982 application was the discussion with the plaintiff concerning his purchase of the lot for use as a side yard in conjunction with his adjoining property and not as a building lot. Thus, the plaintiff, who bears the burden of showing that the 1982 action of the board forecloses consideration of the application filed by DeFrank in 1985, has failed to establish that the same relief was sought in both applications.

Furthermore, as the trial court concluded, the grant of the variance to DeFrank in 1982, with the restriction against using the lot for building, was in effect a nullity, since it merely reaffirmed "a right she already had." No variance or other permission was needed to enable her to use or to sell the vacant lot for continued use as a side yard. The zoning regulations do not purport to restrict transfers of land, but only the uses to be conducted thereon.

So far as disclosed by the record, the circumstances of the 1982 application did not bar consideration of DeFrank's present application on its merits.

II

We have held that the authority of a zoning board of appeals to grant a variance under General Statutes § 8-6 (3) requires the fulfillment of two conditions: "(1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." *Smith* v. *Zoning Board of Appeals*, 174 Conn. 323, 326, 387 A.2d 542 (1978).

The plaintiff does not claim that the variance granted to DeFrank will have an adverse effect upon the comprehensive plan of zoning for West Haven. It is the "unusual hardship" requirement that the plaintiff maintains has not been met. He argues that the evidence presented at the hearing that the value of the lot would be greatly increased if it could be used for the construction of a house is proof of mere financial advantage, which this court has often declared to be insufficient to support a variance of the zoning regulations. "Disadvantage in property value or income, or both, to a single owner of property, resulting from application of zoning restrictions, does not, ordinarily, warrant relaxation in his favor on the ground of practical difficulty or unnecessary hardship." *Thayer* v. *Board of Appeals,* 114 Conn. 15, 22, 157 A. 273 (1932); see *Libby* v. *Board of Zoning Appeals,* 143 Conn. 46, 51 n.1, 118 A.2d 894 (1955). "Financial considerations are relevant only in those exceptional situations where a board could reasonably find that the application of the regulations to the property greatly decreases or practically destroys its value for any of the uses to which it could reasonably be put and where the regulations, as applied, bear so little relationship to the purposes of zoning that, as to particular premises, the regulations have a confiscatory or arbitrary effect." *Carlson* v. *Zoning Board of Appeals,* 158 Conn. 86, 89–90, 255 A.2d 841 (1969).

Because the board, which was required by § 23-3.2 of the regulations to "state upon the records the reason for its decision" in granting or denying a variance, tersely declared only that "hardship was shown," the trial court properly searched the record "to attempt to find some basis for the action taken." *Ward* v. *Zoning Board of Appeals,* 153 Conn. 141, 144, 215 A.2d 104 (1965); *Zieky* v. *Town Plan & Zoning Commission,* 151 Conn. 265, 268, 196 A.2d 758 (1963). We disagree, however, with the trial court's conclusion drawn from

the record of the public hearing that the inability to erect a one-family or two-family residence on the lot meant that "DeFrank could make no reasonable use of the lot" and thus "its market value was minimal." It was undisputed that DeFrank was using the vacant lot as a side yard for the house she owned on the adjoining lot. Such a use was certainly reasonable and undoubtedly would enhance the price she would receive for the property as a whole if she were to sell it. The evidence indicated also that the plaintiff had offered her $8000 for the lot in 1982 so that he might use it, not as a building lot, but as a side yard for his adjoining property. According to the assessor's records the lot had a market value of $5000. This valuation of the lot for the purpose of its current use as a side yard cannot fairly be characterized as "minimal."

Unquestionably the lot would have a much higher value, estimated at $26,000 by an appraiser testifying for DeFrank at the hearing, if it could be used as a building lot. A zoning regulation that prevents land from being used for its greatest economic potential, however, does not create the exceptional kind of financial hardship that we have deemed to have a "confiscatory or arbitrary" effect. In *Culinary Institute of America, Inc.* v. *Board of Zoning Appeals,* 143 Conn. 257, 121 A.2d 637 (1956), a case relied on by DeFrank, where a variance to erect a multiple-family apartment house was granted for land situated in a single-family residence zone, the zoning board had found that the large one-family house on the property could no longer be used as a residence because of the prohibitive cost of maintenance. The zoning board had also found that many similar properties in the area had been converted into multiple apartments, medical offices and one into a convalescent home. There was evidence that the property had been on the market for two years, and could not be sold for its existing use. In the case before us there

is no evidence that the vacant lot is unmarketable for its present use as a side yard enhancing the value of the adjoining DeFrank property or of other adjoining properties, such as that of the plaintiff. Proof of financial hardship having a "confiscatory or arbitrary" effect requires more than testimony that property can be sold only for a price substantially lower than can be obtained if a variance is granted to permit a use otherwise prohibited by the zoning regulations.

DeFrank also claims that because the vacant lot was shown separately from her adjoining house lot on a survey made ten years before the advent of zoning in West Haven, and has been assessed separately for real estate tax purposes,[2] she has shown a hardship pertaining uniquely to her vacant lot that justifies the grant of the variance. Section 23-5.1 of the regulations, however, expressly addresses the situation where a lot "has less than the prescribed minimum lot area or lot width and . . . was owned separately and individually from all other adjoining tracts of land on the effective date of this resolution and on the date of the application for a building permit." The construction of a house on such a lot is permitted, provided that its area is "equal to the average areas of all lots on the same block" and its "frontage is equal to the average lot frontage of all parcels on the same block." West Haven Zoning Regs. § 23-5.1.

DeFrank has maintained that the vacant lot was considered to be an individual building lot prior to zoning

---

[2] The evidence at the public hearing does not indicate that DeFrank has paid a greater amount of real estate taxes to the city of West Haven because the vacant lot has been assessed separately from her adjoining property. The record of the hearing contains the following statements by the chairman of the zoning board of appeals, Borden Steeves, Jr.: "No, no that makes no difference. The amount of tax makes no difference on whether it's one piece. . . . The size doesn't make any difference as far as the taxes go. . . . You pay the same amount per square foot whether it's three or a hundred."

and that it has the same frontage and area as most of the other lots on the street. Those contentions relate to whether the lot, when zoning became effective, qualifies as property "owned separately and individually" from adjoining land and whether it satisfies the average lot area and frontage requirements of § 23-5.1. If the lot meets these requirements this section expressly permits a house to be built upon it.

The record does not disclose whether the "special exception" DeFrank applied for in 1982 was an attempt to obtain a determination of whether the lot satisfies the requirements of § 23-5.1 or why the board decided instead to grant a variance with a restriction against building. In any event, if the lot qualifies as a building lot under § 23-5.1, no variance for that purpose should have been granted, because no hardship has been imposed by the regulations. "It is elemental that a variance is authority granted to the owner to use his property in a manner forbidden by the zoning regulations." *Carlson* v. *Zoning Board of Appeals,* supra, 90. It follows that, if the use for which a variance is sought is permitted by the regulations, the variance cannot be granted.[3]

If the lot does not qualify under § 23-5.1, it is difficult to perceive any distinction between DeFrank's

[3] The concurring opinion suggests that we should resolve this appeal solely upon the ground that DeFrank has not demonstrated that the zoning regulations have imposed any hardship upon her because it has not yet been determined whether her lot may qualify as a building lot under § 23-5.1 of the West Haven zoning regulations. In *Carlson* v. *Zoning Board of Appeals,* 158 Conn. 86, 90–91, 255 A.2d 841 (1969), however, this court held that there was insufficient evidence of hardship, financial or otherwise, to justify the granting of a variance, while also declaring that "[i]t is questionable whether [the applicant] even needed a variance," because he might have had the right to conduct the same activity for which the variance had been granted as a nonconforming use. One of the factors inducing us to follow the *Carlson* precedent in this case is the protracted history of DeFrank's efforts to obtain approval of her lot for the purpose of building a residence upon it. We believe our determination of the financial hardship issue may expedite the ultimate resolution of this controversy.

hardship and that imposed on other owners of lots that do not qualify under the provisions of § 23-5.1. "It is well settled that the hardship must be different in kind from that generally affecting properties in the same zoning district . . . . " *Smith* v. *Zoning Board of Appeals,* supra, 327. The record does not indicate how many other property owners in the zone also had an additional lot in existence before zoning that was being used as a side yard. There is no basis, therefore, for assuming that DeFrank's situation was essentially different from that of many others in the area.

We conclude that the trial court erred in finding sufficient evidence of financial hardship to support the granting of the variance. With respect to the claims of hardship based upon DeFrank's ownership of the vacant lot as separate from her adjoining property, our view is that, until it has been ascertained that the lot does not satisfy the requirements of § 23-5.1 for a building lot in existence prior to zoning and that any hardship imposed on her is different from that suffered by other property owners in the zone, these circumstances provide no basis for a claim of hardship imposed by the zoning regulations.

There is error, the judgment is set aside and the case is remanded to the trial court with direction to sustain the appeal.

In this opinion, CALLAHAN, GLASS and COVELLO, Js., concurred.

PETERS, C. J., concurring. I concur that the trial court should have sustained the plaintiff's appeal in this case. The majority opinion concludes that Jessica F. DeFrank cannot prevail on her claim of "unusual hardship" when § 23-5.1 of the West Haven zoning regulations affords her the opportunity, without a variance, to obtain the relief that she seeks. I agree with that

conclusion. Since DeFrank is foreclosed from obtaining a variance on hardship grounds as a matter of law, I think it is unnecessary to inquire whether, in other circumstances, she would have demonstrated sufficient financial hardship as a matter of fact.

The factual issue of "unusual hardship" strikes me, with due deference, as troublesome. As far as I can tell, the "market" for the lot in question is limited to two potential buyers: the adjoining owner, who is the plaintiff in the present litigation, and an unknown person to whom DeFrank might, in the future, sell the two lots she now owns. On this record, the zoning board of appeals might reasonably have been skeptical about the accuracy of the assessor's appraisal value of $5000. Looking at the entire factual situation, the board of appeals arguably could have determined that DeFrank's side lot, absent a variance, has only minimal market value. I would think it prudent to leave this issue to be resolved on another occasion.

Accordingly, I concur in the judgment.