[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by the Planning Zoning Commission of the CT Page 1830 Town of North Stonington (PZC) and George Brown, Zoning Enforcement Officer of the Town of North Stonington (ZEO) from the action of the Zoning Board of Appeals of the Town of North Stonington (ZBA) in granting a variance to Alan J. Pesch and North Stonington Professional Center.[1]
For the reasons hereinafter stated, the decision appealed from is reversed.
 I.
Plaintiffs have appealed under the provisions of General Statutes § 8-8 (b) which provides that "any person aggrieved by any decision of a board may take an appeal to the Superior Court." To establish the aggrievement required by statute, so as to be entitled to appeal a zoning board's decision, a party must allege facts which, if proven, would constitute aggrievement as a matter of law and prove the truth of those factual allegations.Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184 (1996).
Aggrievement in this case is contested. Defendants claim that plaintiffs are not aggrieved and have no standing to prosecute this appeal from the granting of a variance. Plaintiffs have the burden of proof to establish aggrievement. Whitney Theatre Co. v.Zoning Board of Appeals, 150 Conn. 285, 287 (1963).
In their complaint, plaintiffs allege that they are aggrieved by the granting of the variance because they are charged with the enforcement of the zoning regulations and because the decision was not in harmony with the general purpose and intent of the zoning regulations and not in conformity with the comprehensive plan of the town.
General Statutes § 8-8 (1) includes within the definition of"aggrieved persons" any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board." Section 8-8 (2) includes a planning and zoning commission within the definition of "(b)oard." Section 8-3 (e) provides that: "The zoning commission shall provide for the manner in which zoning regulations shall be enforced."
Section 8-12, entitled "Procedure when regulations are violated," provides in effect that if any land is being used in violation of any provision of any regulation made "under CT Page 1831 authority conferred hereby, any official having jurisdiction, in addition to other remedies, may institute an action or proceeding to prevent, restrain, correct or abate such violation." This section further provides that the regulations shall be enforced by the "officer or official board or authority designated therein."
Section 201 of the North Stonington Zoning Regulations, which derives its authority from General Statutes § 8-3 (e) and § 8-12, enacted by the plaintiff Commission provides that the regulations are to be enforced by the ZEO. This section gives the ZEO authority to issue orders and to initiate action in certain instances. The ZEO is allowed to seek injunctive relief, however, only upon majority vote of the commission.
The basic facts underlying the aggrievement issue indicate that by letter dated June 30, 1997, the ZEO communicated to Mr. Pesch that the PZC had directed him to inform Mr. Pesch that he was in violation of §§ 1000 and 1000.2 of the zoning regulations and if such violations continued a cease and desist order would be issued. On July 17, 1997, the ZEO did issue a cease and desist order for claimed violations of § 1000 and 1000.2 in that he was allowing illegal parking at the North Stonington Professional Center. Mr. Pesch did not appeal this order to the board within the period allowed by General Statutes § 8-7. On September 23, 1997, however, Mr. Pesch applied to the board for a variance of the strict application of §§ 1000 and 1000.2 of the regulations to allow him to engage in the activity which the cease and desist order sought to terminate. Defendant board held a public hearing on the application and on December 11, 1997, granted the variance. This appeal followed.
Defendants argue that the Planning Zoning Commission and the ZEO are not aggrieved by the granting of the variance since neither plaintiff has any role in the variance process. It is the position of defendants that, in the absence of a specific reservation of authority in the regulations, the commission and the ZEO have no standing to appeal a ZBA action unless it involves an order issued by the PZC or the ZEO.
In this argument plaintiffs rely on Tyler v. Board of ZoningAppeals, 145 Conn. 655 (1958); Dupuis v. Zoning Board of Appeals,152 Conn. 308 (1965): Bouvier v. Zoning Board of Appeals,28 Conn. Sup. 278 (1969); Planning Zoning Commission of the Town ofMiddlebury v. Zoning Board of Appeals of the Town of Middlebury,
CT Page 1832 7 CONN. L. RPTR. 938 (1992); and Fuller, Land Use Law andPractices, § 32.4, pp. 531-34. A review of these authorities, however, indicates that defendant's reliance on them in this argument is not well taken.
Tyler involved an appeal by the zoning commission from the granting of a variance. The issue of aggrievement was raised and resolved against the commission. The basis for this decision, however, was that unlike the North Stonington regulations, under the Woodbridge ordinance the commission had no function in the enforcement of the zoning regulations. Tyler v. Board of ZoningAppeals, supra, 45 Conn. 658. The court went on to state at page 658:
 We have recognized that there is a public interest involved in many appeals which should be represented before the court. In most such situations, the board or officer having the responsibility of making the decision is entrusted with the duty of protecting that public interest. Maltbie, Conn. App. Proc., p. 311. Accordingly, we held in Rommell v. Walsh, 127 Conn. 16, 23, 15 A.2d 6, that a zoning board of appeals may be made a party defendant in an appeal taken from an order it has made and, where the trial court has overruled the board's decision, may prosecute an appeal to this court to protect the public interest involved. The decision recognized that, apart from the provision in § 379d for action by an enforcement officer to protect the public interest, there may be occasion for a board whose ruling is in question to intervene, itself, to protect the public interest. The municipality concerned is always entitled to represent such interests by participating as a party to an appeal. (Citations omitted.)
 Dupuis is very close to the situation presented here. This was an appeal by the building inspector from the granting of a variance to allow an addition to a nonconforming building. The court found that the building inspector was the proper officer to enforce the zoning regulations and that he was authorized to take the appeal under General Statutes § 8-8. It was determined that it would be incumbent on the building inspector to issue a building permit if the variance was allowed to stand. This is similar to the present situation where the variance would nullify CT Page 1833 the cease and desist order. Dupuis v. Zoning Board of Appeals,supra, 152 Conn. 310-11.
In Bouvier, the court determined that the ZEO and the planning and zoning commission were aggrieved parties. The court relied on Dupuis to conclude that the ZEO being the officer "charged with the enforcement of the decision of the board" was authorized to appeal the granting of a variance. Bouvier v.Zoning Board of Appeals, supra, 28 Conn. Sup. 285. The court also went on to conclude that the planning and zoning commission acting through its agent, the ZEO, had a duty to see to it that no land should be used unless it was in accordance with the regulations and that the commission had authority to appoint its agent as ZEO. At page 286, the court went on to find that:
 6. Since in the town of Monroe the enforcement of zoning regulations is under the overall control and guidance of the zoning commission, the commission itself would be entitled to appeal. Tyler v. Board of Zoning Appeals. supra. Therefore, the plaintiff Plumer, acting in his official capacity as chairman of the commission, is a proper party entitled to appeal.
In the Middlebury case, the court, relying on Tyler concluded that the planning and zoning commission did not have responsibility for enforcement and therefore had no standing to appeal the granting of a variance. At page 940, the court stated that even if it was wrong on the aggrievement issue, the variance would have to be upheld since the record easily supported the granting of the variance.
Defendants also rely on Fuller who, relying on language inTyler, states at page 531 that the ZEO has no authority to appeal from the granting of a variance. Fuller's rationale appears to be that the variance process is, under the statutes, exclusive to the board of appeals, does not involve the enforcement of the regulations, and by its nature allows a deviation from the regulations. This conclusion, however, appears to be contrary to the holding in Dupuis.
In the present case, it must be concluded that both plaintiffs, the ZEO and the PZC are statutorily aggrieved and have standing to prosecute the appeal. CT Page 1834
Under the statutes the ultimate authority for the enforcement of the zoning regulations lies with the zoning commission. General Statutes § 8-3 (e) allows the commission to provide the manner in which the zoning regulations should be enforced. Pursuant to that authority the commission enacted § 201 of the regulations which authorizes general enforcement of the regulations by the ZEO. Acting under that authority and General Statutes § 8-12, the ZEO issued the cease and desist order. The granting of the variance directly thwarts the cease and desist order and prevents the ZEO from enforcing it. From this, it must be concluded that the ZEO is aggrieved. Dupuis v. ZoningBoard of Appeals, supra, 152 Conn. 308.
As previously noted, the primary and ultimate responsibility for enforcement of the zoning regulations lies with the zoning commission, or in North Stonington, the PZC. The fact that the statutes authorize the commission to delegate authority does not diminish the commission's ultimate local authority for enforcement of the regulations. The Marine Corps principle that authority may be delegated but responsibility may never be delegated is reflected in the statutes and § 201 of the zoning regulations.
It is significant that in enacting § 201, the PZC authorized the ZEO to generally enforce the regulations but retained to itself the authority to authorize injunctive relief. In the present situation where a cease and desist order has been issued the variance prevents the commission from authorizing any action for injunctive relief. This is particularly significant where the PZC initiated the whole process by ordering the ZEO to send the letter of June 30, 1997, and the chairman of the commission testified that the granting of the variance is not in accordance with the plan of development. For these reasons, it must be concluded that the planning and zoning commission is statutorily aggrieved and has standing as plaintiff in this case.Dupuis v. Zoning Board of Appeals, supra, 152 Conn. 308: Bouvierv. Zoning Board of Appeals, supra, 28 Conn. Sup. 278; Planning Zoning Commission of the Town of Waterford v. Zoning Board ofAppeals of the Town of Waterford, et al. 15 CLT 13 (1989).Tondro. Connecticut Land Use Regulations, 2d Ed. § 8:d, p. 556.
In addition to a showing that the PZC is statutorily aggrieved, it is also found that the Commission is "classically" aggrieved. A determination of such aggrievement involves a CT Page 1835 two-prong test. First, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decisions as distinguished from the general interest, such as is the concern of all members of the community as a whole; second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. Schwartz v. Town Plan Zoning Commission,168 Conn. 20, 25 (1975).
The plaintiff PZC has the duties imposed on such commission by General Statutes Chapters 124 and 126. This includes responsibilities for the zoning regulations and the plan of development of the town. Here, the PZC initiated the action out of an expressed concern that the regulations were being violated when It directed the ZEO to issue the letter of June 30, 1997.
The chairman of the commission also testified that the variance would not be in accordance with the plan of development. From this, it is concluded that the PZC is aggrieved and has standing under the two-prong test above stated. Tondro, Connecticut LandUse Regulations, 2d Ed., § 8:d.
 II.
The basic facts underlying this appeal are not greatly in dispute. From the record the following facts are found.
Defendant Pesch is the owner of North Stonington Professional Center which includes four office buildings located on a parcel of land in the Town of North Stonington in an Office Research (OR) zone. One of the tenants leasing office space in the center is the Mashantucket Pequot Gaming Enterprise. Under the terms of its lease, the gaming enterprise is allowed with other tenants to use common areas and the parking area which is an accessory to the center.
Generally, the Mashantucket Pequot Gaming Enterprise uses the parking lot, as do other tenants, for the parking of vehicles used by its employees working on the premises and business visitors.
The Mashantucket Pequot Gaming Enterprise is an entity of the Mashantucket Pequot Tribe which operates a casino in a neighboring town employing large numbers of people. On occasion, CT Page 1836 when parking problems arise in connection with casino employees, Pesch allows employees of the casino operation who do not work at the professional center in North Stonington to park their vehicles in the professional center's parking lot. These employees are then transported to their place of employment at the casino in the neighboring town by bus. Approximately 250 vehicles have been parked at the center under this arrangement. This is considerably more than the number of vehicles which would be parked by those employees of the gaming enterprise working on the premises
The zoning regulations of the Town of North Stonington contain the following provisions which are applicable in the OR zone.
 1000 — Off-street Parking and Loading. New, changed, or expanded uses in all districts shall conform to the parking and loading area design requirements of this section. Parking and loading requirements shall be met on the same lot as the principal use they serve. The same area shall not serve as meeting both the parking and the loading space requirements.
 1000.2 — On-Site Parking. All required off-street parking facilities shall be provided on the same lot with the structure or use it serves, except that off-street parking spaces required for structures or uses on two adjoining lots may be located in a single common facility on one or both of said lots, providing the lots are in common ownership.
 A parking lot as an accessory use is permitted only if the principal structure to which it is accessory is located within the Town of Stonington.
As above noted, the PZC directed the ZEO to issue the letter of June 30, 1997, informing Mr. Pesch that allowing off-site parking by casino employees at the professional center was in violation of the above sections and that unless such activity was voluntarily discontinued, a cease and desist order would be issued. On July 17, 1997, the cease and desist order was issued.
On September 23, 1997, the request for a variance was filed with the ZBA. The application indicates that it related to a CT Page 1837 "use." In filling out the application rather than supply the specific information requested, such as hardship claimed, Mr. Pesch inserted "please see attached."
Attached to the application were a number of documents including a three-page letter entitled "circumstances of the case." The fact that the application was less than succinct resulted in a certain amount of confusion as to what relief Mr. Pesch was in fact seeking. A review of the record, however, confirms the conclusion of the ZBA that he was seeking a variance of §§ 1000 and 1000.2 of the zoning regulations.
A public hearing was held on the application on December 11, 1997. At this hearing, the attorney for the ZEO and the PZC appeared in opposition to the granting of the variance. After the hearing the ZBA discussed the matter and, without stating its reasons, voted to approve the variance as follows:
 [I]n that the owner may utilize the property for parking of vehicles for any business use of the tenants of the property, including off-site parking of employees of the tenant, transporting employees to and from adjacent off-site facilities in and outside of North Stonington so long as the accessory use is incidental to the normal use of the property. This appeal followed the granting of the variance.
 III.
In considering the issues raised in this appeal, the scope of judicial review is limited. Horn v. Zoning Board of Appeals,18 Conn. App. 674, 676 (1989). The authority of the court is limited by § 8-8 to a review of the proceedings before the ZBA. The function of the court in such a review is to determine whether the board acted fairly or on valid reasons with the proper motives. Willard v. Zoning Board of Appeals, 152 Conn. 247,248-49 (1964). The Court is limited to determining whether the record reasonably supports the conclusions reached by the board. Burnamv. Planning and Zoning Commission, 189 Conn. 261, 265 (1983). The court cannot substitute its discretion for the liberal discretion confirmed by the legislature on the ZBA. The court is limited to granting relief only when it can be shown that the board acted arbitrarily or illegally and consequently has abused its statutory authority. Gordon v. Zoning Board, 145 Conn. 597, 604
(1958). The burden rests with the plaintiff to prove the CT Page 1838 impropriety of the board's actions. Burnam, supra, 189 Conn. 266.
It is not the function of the court to rehear the matter or question wisdom of the defendant board in taking the action which it did. The court is limited to determining whether or not the board's action can be supported under the law.
Where, as here, the ZBA failed to state the reasons for its actions on the record, the Court must search the record to attempt to find some basis for the action taken. Grillo v. ZoningBoard of Appeals, 206 Conn. 362, 369 (1986).
Here, Mr. Pesch has requested that the ZBA grant a variance from the strict application of two sections of the zoning regulations. A variance constitutes permission for a party to use their property in a manner otherwise prohibited by the zoning regulations. For these reasons, the granting of a variance is generally reserved for unusual or exceptional circumstances.Bloom v. Zoning Board of Appeals, 233 Conn. 198, 206 (1995).
Defendant board derives its authority to vary the application of the zoning regulations from the provisions of General Statutes § 8-6 (3). This statute authorizes the board:
 [T]o determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed.
Section 207 of the zoning regulations is of the same import and is derived from General Statutes § 8-6.
Variances are, in a sense, the "antithesis of zoning." Zoning CT Page 1839 is regulation by the municipality of the use of land within the community, and the buildings and structures which may be located thereon, in accordance with a general plan. The General Statutes authorize such regulation of land and the use of buildings. Such regulations, however, must be applied uniformly throughout each district. A variance disrupts the conformity and constitutes permission to act in a manner that is otherwise prohibited by the zoning regulations. Simko v. Ervin, 234 Conn. 498, 505-06 (1995).
The two basic conditions which must be met for the granting of a variance are (1) the variance must be shown not to affect substantially the comprehensive zoning plan; and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. Grillo v. Zoning Board of Appeals,206 Conn. 362, 368 (1988).
An applicant for a variance must show that, because of some peculiar characteristic of its property, the strict application of the zoning regulation produces an unusual hardship as opposed to the general import which the regulation has on other properties in the zone. Dolan v. Zoning Board of Appeals,156 Conn. 426, 429 (1968).
The board is under no duty to extricate an applicant from a self-created hardship. Pollard v. Zoning Board of Appeals, supra, 44.
A mere economic hardship is insufficient to justify granting a variance. Krejpcio v. Zoning Board of Appeals, 152 Conn. 657,662 (1965).
The record indicates that at the public hearing, ZBA members were sympathetic to Mr. Pesch's position and did not like the regulation. The chairman, Mr. Ryerson, expressed an understanding of what the board would have to find and stated: "One more time I just need help understanding the hardship." Mr. Pesch's reply did not directly address the question. He, in effect, argued that the zoning regulations were too restrictive and that granting the variance would increase public safety and reduce traffic on Route 2, and that this would be consistent with the town's plan of development.
The argument presented to the ZBA was that the regulations prevented Mr. Pesch from normal accessory parking by visitors and CT Page 1840 other employees of his tenant who did not work on the premises. This is an over-restrictive and unreasonable interpretation of § 1000.2. This section would allow such parking as it is an accessory to the structure which it serves. This is quite different, however, from the situation described in the letter of June 30, 1997, and the cease and desist order where up to 250 cars were allowed to use the parking area with shuttle buses transporting the employees to their place of employment in another town.
A review of the record fails to show evidence that adherence to the strict letter of the zoning regulations would cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. Grillo v. Zoning Board of Appeals,
supra, 206 Conn. 368. Also. there is nothing to show that because of some peculiar characteristic of the property the strict application of the zoning regulations would produce an unusual hardship as opposed to the general impact which the regulations would have on other properties in the zone. Dolan v. Zoning Boardof Appeals, supra, 156 Conn. 429.
A variance which would allow parking such as envisioned by Mr. Pesch would not be in accordance with the comprehensive zoning plan as reflected in §§ 1000 and 1000.2 of the zoning regulations. The regulations seek to limit parking lots to accessory uses for structures within the Town of North Stonington. Grillo v. Zoning Board of Appeals, supra. The variance as worded contains no limitation on the number of vehicles which could be parked or times during which they could be so parked.
This conclusion that the ZBA exceeded its authority in granting the variance obviates the necessity of determining what it did grant. The language of the variance is confusing and it could be argued that the phrase "incidental to the normal use of the property" rendered the variance a nullity. The variance as worded could certainly be the occasion for future confusion and litigation.
Since the above conclusion is determinative of the case, no decision need be made as to whether the ZBA's action constituted a use variance, impermissible under § 207 of the zoning regulations.
Accordingly, judgment is rendered for the plaintiffs and the CT Page 1841 decision appealed from is reversed. General Statutes § 8-8
(e).
PURTILL, J.