[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal from the action of the Zoning Board of Appeals of the City of Norwich (hereinafter the board) in granting a variance for the use of real property within the City of Norwich.
For reasons hereinafter stated, the decision of the board granting the variance is affirmed.
The appeal is brought under the provisions of General Statutes § 8-8. Section 8-8(2)(b) limits such appeals to persons aggrieved by the decision appealed from. Pleading and proof of aggrievement are essential to establish subject matter jurisdiction in an appeal such as this. Hughes v. Town Planning Zoning Commission, 156 Conn. 505, 508-509 (1968). Section 8-8(1) provides that the term "aggrieved person" includes any person owning land that abuts or is within a radius of 100 feet of any portion of the land involved in the decision of the board. From the evidence, it is found that plaintiff Cathy Bokoff owns property within 100 feet of the land involved and is statutorily aggrieved and has standing to prosecute this appeal. Pierce v.Zoning Board of Appeals, 7 Conn. App. 632, 636 (1986).
The record indicates that, by application dated August 19, 1997, defendant Irving Webber (hereinafter applicant) applied to the board for a variance of § 3.23.4 of the zoning regulations to reduce a portion of the required width of the access strip serving a proposed rear lot from the 25 feet required by the regulation to 22.35 feet. The property involved was described as 75 and 77 Gifford Street. The owners were listed as defendants Elaine R. Bowman, Irving Webber and Marvin Webber. CT Page 13218 The property was located in an R-25 zone.
A public hearing was held on the variance application on September 9, 1997. At this hearing, parties in favor of granting the variance were heard as well as those opposed.
After the public hearing, the board discussed the issue and voted unanimously to grant the variance.
In granting the variance, the board failed to state the reasons for its decision on the record as required by General Statutes § 8-7. The board also failed to set forth its findings as required by § 19.1.3(b) of the zoning regulations.
Although individual members of the board discussed reasons for granting the variance, the board failed to state a collective, official reason for its decision to grant the variance. In such situations, the court must search the record to determine whether the decision is supported by the evidence.Grillo v. Zoning Board of Appeals, 206 Conn. 362, 369 (1986);Bloom v. Zoning Board of Appeals, 233 Conn. 198, 209 (1995).
The board is empowered to grant variances by General Statutes § 8-6(a)(3) which provides:
 Sec. 8-6. Powers and duties of board of appeals: . . . (3) to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed.
The board also derives its authority to grant variances from § 19.1.3 of the Norwich zoning regulations. Section 19.1.3 of the regulations provides as follows: CT Page 13219
 19.1.3 Variances. To vary the strict application of any of the requirements of this ordinance in the case of an exceptionally irregular, narrow, shallow, or steep lot or other physical conditions for which strict application would result in exceptional difficulty or unusual hardship that would deprive the owner of the reasonable use of the land or building involved, but in no other cases. No variance in the strict application of any provision of this ordinance shall be granted by the zoning board of appeals unless it finds:
 (a) That there are special circumstances or conditions fully described in the findings of the board, applying to the land or buildings for which the variance is sought, which circumstances or conditions are peculiar to such land or building, and do not apply generally to land or buildings in the neighborhood, and have not resulted from any act subsequent to the adoption of these regulations, whether in violation of the provisions hereof or not; and
 (b) That, for reasons fully set forth in the findings of the board, the aforesaid circumstances or conditions are such that the strict application of the provisions of this ordinance would deprive the applicant of the reasonable use of such land or building and the granting of the variance is necessary for the reasonable use of the land or building, and that the variance as granted by the board is the minimum variance that will accomplish this purpose; and
 (c) That the granting of the variance will be in harmony with the purposes and intent of these regulations, and will not be injurious to the neighborhood or otherwise detrimental to the public welfare.
A variance constitutes permission for a property owner to use his, or her, land in a manner that is otherwise prohibited by the zoning regulations. Burlington v. Jencik, 168 Conn. 506, 508
(1975). The granting of variances must be reserved for unusual or exceptional circumstances. Kelly v. Zoning Board of Appeals,21 Conn. App. 594, 598 (1990). An applicant for a variance must show CT Page 13220 that, because of some peculiar characteristic of the property, the strict application of the zoning regulations produces an unusual hardship, as opposed to the general impact which the regulations has on other properties in the zone. Dolan v. ZoningBoard of Appeals, 156 Conn. 426, 430 (1968).
For a zoning board of appeals to grant a variance under the provisions of § 8-6(a)(3) two basic requirements must be satisfied. "(1) the variance must be shown not to affect substantially the comprehensive zoning plan; and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." (Internal quotation marks omitted.)Grillo v. Zoning Board of Appeals, supra, 206 Conn. 368.
Proof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance. Point O'Woods Assn., Inc. v. Zoning Board ofAppeals, 178 Conn. 364, 368 (1979).
In considering the issues raised in this appeal, the scope of judicial review is limited. Horn v. Zoning Board of Appeals,18 Conn. App. 674, 676 (1989). The authority of the court is limited by law to a review of the proceedings before the board. The function of the court in such a review is to determine whether the board acted fairly or on valid reasons with the proper motives. Willard v. Zoning Board of Appeals, 152 Conn. 247,248-49 (1964). The court is limited to determining whether the record reasonably supports the conclusions reached by the board.Burnam v. Planning and Zoning Commission, 189 Conn. 261, 265
(1983). The court cannot substitute its discretion for the liberal discretion conferred by the legislature on the board. The court is limited to granting relief only when it can be shown that the board acted arbitrarily or illegally and consequently has abused its statutory authority. Gordon v. Zoning Board,145 Conn. 597, 604 (1958). The burden rests with the plaintiff to prove the impropriety of the board's actions. Burnam, supra,189 Conn. 266.
It is not the function of the court to rehear the matter or question wisdom of the defendant board in taking the action which it did. The court is limited to determining whether or not the board's action can be supported by the law.
The record indicates that the property which was the subject CT Page 13221 of the variance was part of a subdivision known as subdivision 309 approved in 1991. This subdivision consisted of three lots fronting on Gifford Road. Lots 1 and 2 of the subdivision appear to be regular size building lots with appropriate frontage and area for the zone. Lot 3 has more frontage than adjoining Lot 2. Lot 3 also included a substantial rear area which included wetlands. At the time the subdivision was laid out, there was no provision in the zoning regulations for rear lots.
On March 2, 1992, the zoning regulations were amended and § 3.23, rear lots, was added.
This amendment permitted rear lots in R-25 zones with certain requirements. Section 3.23.1 required that the rear lot be twice the area required in the zone (50,000 square feet in the R-25 zone). Section 3.23.4 also required a minimum frontage of 25 feet on a street and a driveway to the rear portion of the lot 25 feet in width.
As noted, § 3.23 allowing rear lots, was not available to the developer at the time of the subdivision in 1991. A review of the zoning regulations and the subdivision map indicates that if § 3.23 existed, the developer most probably could have laid out the rear portion of Lot 3 as a separate rear lot.
The applicant now desires to file for a resubdivision with the rear area of Lot 3 becoming a separate rear lot as provided in § 3.23. The area of the proposed rear lot would exceed the 50,000 square foot requirement and the minimum frontage of 25 feet on an approved city street would be complied with as well as the requirements of §§ 3.23.3, 3.23.5 and 3.23.6.
Section 3.23.4 requires that the access strip from the public street to the rear lot be 25 feet in width for its entire length. The applicant can provide an access strip which is 27.58 feet in width at the street and the end, but because of the location of the house on Lot 3 and the side line requirement of the R-25 zone, the width of the access strip would be reduced to 22.35 feet for the length of the house being 48.47 feet.
The decision of the board, which is the subject of this appeal, would allow a variance from the strict requirement of § 3.23.4 to enable Webber to reduce the width of the access strip to 22.35 feet for a distance of 48.47 feet. CT Page 13222
Plaintiff claims that the granting of the variance was illegal and arbitrary. The basis of this claim is that there was insufficient evidence before the board to make a finding of unusual hardship.
The necessity of proving exceptional difficulty or unusual hardship before a variance can be granted has already been discussed. Point o'Woods Assn., Inc. v. Zoning Board of Appeals,supra, 178 Conn. 368.
Plaintiff argues that if any hardship existed, it was created by the applicant. Where the claimed hardship arises from the applicant's voluntary act a zoning board lacks the power to grant a variance. Aitken v. Zoning Board of Appeals, 18 Conn. App. 195,205 (1989). The hardship which justifies a board of zoning appeals in granting a variance must be one that originates in the zoning ordinance and arises directly out of the application of the ordinance to circumstances or conditions beyond the control of the party involved. Self-inflicted hardship is never considered proper grounds for a variance. When the applicant or his or her predecessor creates a nonconformity, the board lacks power to grant a variance. Pollard v. Zoning Board of Appeals,186 Conn. 32, 39-40 (1982).
In the Pollard case, the defendants were unable to comply with the requirements of the zoning regulations because of an error made by a surveyor in subdividing the property. The zoning board of appeals found hardship and granted a variance. The Supreme Court concluded that the variance was illegal since the defendants held title to the land at the time of the survey and were the beneficiaries of the errant surveyor's work. The court determined that the hardship was personal and self created.Pollard v. Zoning Board of Appeals, supra, 186 Conn. 43-44.
The situation here differs from that in Pollard since in this case no error was made. The 1991 subdivision conformed to the existing regulations and the house, which is the cause of the present problem preexisted the subdivision and appears to have been built in accordance with whatever regulations existed at the time.
In Kulak v. Zoning Board of Appeals, 184 Conn. 479 (1981), a subdivision map was filed in 1916 in compliance with the regulations then existing. In 1951, a new ordinance was adopted increasing the frontage requirement. Defendants purchased a lot CT Page 13223 in the 1916 subdivision and applied for a variance which was granted. The Supreme Court upheld the variance finding that the hardship was not self created but arose out of the change in the zoning ordinance.
A case similar to the present situation is Stillman v. ZoningBoard of Appeals, 25 Conn. App. 631 (1991) in which the Appellate Court upheld the granting of a variance where the hardship arose out of the configuration of a lot and the location of a preexisting well and septic system. The court held that under such circumstances, a literal enforcement of the regulations would cause exceptional difficulty or hardship. The court reasoned that the unusual characterization of the property arose out of the placement of the improvements on the property.
In the case at bar, it is the location of the house on Lot 3 which prevents compliance with the requirement that the access strip be 25 feet in width.
The Supreme Court has held that where a board could reasonably find that the application of the regulation to the property greatly decreases or practically destroys its value for any of the uses to which it could reasonably be put and where the regulation, as applied, bears so little relationship to the purposes of zoning that, as to particular premises, the regulation has a confiscatory or arbitrary effect. Dolan v.Zoning Board of Appeals, supra, 156 Conn. 431. This rule of law has application to the present case. The rear area of Lot 3 greatly exceeds that portion of the lot which is comparable to Lots 1 and 2. In the present situation, without the variance, the large rear section of the property can be put to no practical use except for incidental enjoyment in connection with the front portion of the lot. This was recognized by Mr. Jacaruso, chairman of the board who, during discussions stated, "I think there is a hardship there, without the driveway going back there he can't get reasonable use of that, that piece of property."
A review of the applicable case law leads to the conclusion that the record reasonably supports the decision of the board that adherence to the strict letter of the zoning ordinance would cause unusual hardship unnecessary to the general purpose of the zoning plan. Grillo v. Zoning Board of Appeals, supra,206 Conn. 368. As recognized by the board, without the variance the applicant can make no reasonable use of the property in question and as in Stillman v. Zoning Board of Appeals, 25 Conn. App. 631, CT Page 13224 he is prevented from strict compliance with § 3.23.4 by a preexisting building.
A determination of hardship alone would not support the granting of a variance. It would also have to be determined that the variance did not affect substantially the comprehensive zoning plan. Grillo v. Zoning Board of Appeals, supra. The comprehensive plan consists of the zoning regulations themselves and the zoning map which has been established pursuant to those regulations. Burnham v. Planning Zoning Commission, supra,189 Conn. 267.
Here, the record supports a conclusion that the variance would not substantially affect the comprehensive zoning plan. The residential use of the property would not be affected by the variance and the potential rear lot would be in substantial compliance with § 3.23. The only deviation from the regulations would be a 2.66 foot reduction in the required width of the access strip for a short distance. Since it is highly unlikely that any improved driveway through the access strip would extend for its full width, the deviation would be almost imperceptible and could have no measurable effect on the value of properties in the neighborhood or otherwise be detrimental to the public welfare. Also, before the variance could be put to use the subdivision and public health regulations would have to be complied with.
As previously noted, it is not the function of the court to rehear the case or to substitute its discretion for that of the board. Here, it must be concluded that the record reasonably supports the decision of the board to grant the variance under the provisions of General Statutes § 8-6 and § 19.1.3 of the zoning regulations.
Accordingly, judgment is rendered for the defendants affirming the decision of the board granting the variance.
Joseph J. Purtill Judge Trial Referee