[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal from a decision of the defendant denying an application for a variance which raises the unusual issue of who has the burden of proof in regard to whether the hardship necessary for a variance is self-created.
On August 29, 2001, the plaintiff applied to the defendant for a variance of Article II, Section 3, RESIDENCE AA ZONE — 3.01.01 which requires a minimum lot area of 18,000 square feet. Plaintiff claimed to defendant (herein after also "ZBA"), that Parcel B in Exhibit A presented to the ZBA, being a site plan prepared by Meehan Associates revised 4/26/85, which contains a dwelling known as 134 Prospect Street in Manchester, has only 12,336.65 square feet which is less than the 18,000 square feet minimum requirement. Plaintiff has claimed that said Parcel B presents a hardship to the plaintiff because the house was built in 1847, and the 18,000 minimum square foot requirement was adopted on December 1, 1956, and it was, the adoption of the ordinance or regulations of the Manchester Planning and Zoning Commission (Return of Record 3) that created the hardship and that the hardship was created further by the action of the Town of Manchester laying out Prospect Street, the northwest boundary of which is on a curve, which took away property of the plaintiff or his predecessors in title thereby reducing Parcel B to 12,336.65 square feet.
A public hearing, duly noticed, was held by the ZBA on September 19, 2001 at which the plaintiff presented his application and various exhibits. By meeting of the ZBA on September 19, 2001 following the public hearing, the ZBA voted to approve the application by a vote of 3-2. Four votes being required for approval, the application failed to be approved, and the plaintiff was notified by letter of September 26, 2001 of said denial. Notice of the denial by publication appeared in a newspaper on September 27, 2001 and on September 29, 2001. The plaintiff then initiated this appeal from the decision of the ZBA in a timely manner on October 11, 2001. CT Page 12454
 AGGRIEVEMENT
Aggrievement is a jurisdictional matter and a prerequisite for maintaining an appeal. Winchester Woods Associates v. Planning Zoning Commission, 219 Conn. 303, 307, 592 A.2d 953 (1991). "The question of aggrievement is essentially one of standing." (Citation omitted.)DiBonaventura v. Zoning Board of Appeals, 24 Conn. App. 369, 373,573 A.2d 1222 (1991). Unless the plaintiff alleges and proves aggrievement, the court must dismiss the appeal. Id. General Statutes § 8-8 (a) defines an "aggrieved person" as "any person owning land that abuts or is within the radius of one hundred feet of any portion of the land involved in the decision of the board."
During the court hearing which was held before this Court on July 15, 2002, the parties stipulated that the plaintiff is the owner of the property subject of the application. Accordingly, the Court found then and finds now that the plaintiff is statutorily aggrieved.
 STANDARD OF REVIEW
The following authorizes the ZBA to grant variances:
Section 5.01.04 of the Manchester Zoning Regulations states as follows:
 "Authorize on appeal, variances from the strict application of the provisions of these regulations to a specific lot or piece of property where, by reason or exceptional shape, exceptional topography or other exceptional situation or conditions, unusual difficulty or unreasonable hardship would result to the owners of said property; provided that relief can be granted without impairment of the integrity of these regulations and without substantial detriment to the public welfare. Before any variance is granted, it shall be shown that special circumstances attach to the property, which do not generally apply to other property in the same neighborhood."
CGS § 8-6 (a) (3) states in pertinent part as follows:
"to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due CT Page 12455 consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured. . .
Judicial review of the ZBA's decision is limited to a determination of whether the decision was arbitrary, illegal or in abuse of discretion.Whittaker v. Zoning Board of Appeals, 179 Conn. 650, 654 (1980). ". . . a hardship that was self-created, however, is insufficient to justify a variance. . . ." Bloom v. Zoning Board of Appeals, 233 Conn. 198, 206-07
(1995) Id. 208. Also, see Whittaker v. Zoning Board of Appeals, supra, which states in pertinent part: "Where the claimed hardship arises from the applicant's voluntary act, however, a zoning board lacks the power to grant a variance. . . . The hardship which justifies a board of zoning appeals in granting a variance must be one that originates in the zoning ordinance . . . and arises directly out of the application of the ordinance to circumstances or conditions beyond the control of the party involved. . . ." Whittaker v. Zoning Board of Appeals, supra, Id. 658.
A. "Self-created hardship should not be applied where the regulations create a hardship themselves and the other requirements for variance are met, and the hardship is the same as if the applicant or his agent had not acted without a variance." Connecticut Practice Volume 9, Land Use Law and Practice, 2nd Ed. by Robert A. Fuller (1999), as amended by 2001 Pocket Part at page 187. Fuller is a former judge of the Superior Court and is a recognized authority on land use law and practice.
Is it well settled that where a zoning board acts on an application for a variance but fails to state its reason for the granting or denial of the variance, the Court must search the record in an attempt to find some basis for the action taken. Grillo v. Board of Zoning Appeals,206 Conn. 362, 369 (1988).
 ISSUES
In the ZBA's notification to the applicant, plaintiff, that the application was denied the only reason given was "The reason for denial was the failure to receive the necessary four affirmative votes." ROR (Return of Record) No. 4. Accordingly, since the ZBA did not give any CT Page 12456 substantive reason for denying the application, this Court has searched the entire record involving this application.[1]
From the totality of the evidence, the record, as well as the pre-trial and post-trial briefs of the parties, this Court finds as follows:
 1. IS THERE A VALID HARDSHIP TO JUSTIFY THE GRANTING OF THE APPLICATION?
The short answer is yes. Reviewing the requirements of Article 5.01.04 of the Manchester Zoning Regulations, the Court finds:
(a) Strict application of the regulation requiring a minimum lot size of 18,000 square feet causes a hardship to the plaintiff since Parcel B is only 12,336.65 square feet. The house on Parcel B was built in 1847, and the Parcel B has been in the plaintiff's family since at least 1847, and became non-conforming when the minimum lot requirement was raised to 15,000 square feet on November 4, 1950 and, of course, to 18,000 square feet on December 1, 1956. Prior to November 4, 1950 the minimum lot requirement was 12,000 square feet. A hardship was also created by the Town of Manchester Board of Selectmen exercising its authority to lay out Prospect Street. See Exhibit E of the record before the ZBA. Page 104, October, 1838. In laying out Prospect Street, it took from the plaintiff's predecessors in title land from both Parcel B and Parcel A on Exhibit B to provide a curve on Prospect Street; namely, at the southeasterly edge of the plaintiff's property. By making it into a curve as shown on Exhibit B and Exhibit A, the area taken is the area between the present southeast boundary of Parcels A and B, a curved boundary, and the vertical line of what is shown as Prospect Street and the horizontal line of Hackmatack Street as shown on Exhibit B. This was done in order to have a curve at the intersection of the two streets but resulted in land between the curve and the vertical and horizontal parts of Prospect and Hackmatack Streets respectively as shown on Exhibit B being taken from plaintiff's predecessors in title, thereby providing a curved Prospect Street as opposed to a rectangular intersection of Prospect and Hackmatack Streets. Therefore, a hardship was the action of the Board of Selectmen in laying out and taking land necessary for the curve on Prospect Street to be created, and further hardship was done by the Zoning Regulations when the Regulations provided for an increase of the minimum square foot lot requirement to be raised from 12,000 square feet to 15,000 square feet.
If the land had not been taken, and the boundary of the two parcels, A and B, had remained the intersection of a vertical Prospect Street and a horizontal Hackmatack Street where they intersected, the total amount of CT Page 12457 square footage would have been as shown on Exhibit B, 37,980 square feet which could have provided for compliance with the 18,000 square foot minimum lot requirement if and when the plaintiff wanted to have two lots each at or in excess of 18,000 square feet. This was computed as shown on Exhibit B by multiplying the northeasterly boundary of the two lots which is bounded by land now or formerly of MISTRETTA, at approximately 180 feet by the westerly boundary of Parcel A as shown on Exhibit B of approximately 211 feet which is bounded by land now or formerly of NODDEN. This Court agrees with the opinion of Downey, J. in Hammond v.Town of Brandford ZBA, Superior Court, Judicial District of New Haven, Docket No. CV-99-0422752 (January 31, 2000) attached to plaintiff's post-trial brief in which Judge Downey stated on page 6: "Part of the owner's legitimate expectation in ownership of the lot was the right to subdivide it."
Returning to Article 5.01.04 of the Manchester Zoning Regulations, the Court finds that there is exceptional shape and exceptional situation to the plaintiff's Parcel B as well as Parcel B and Parcel A combined, the exceptional shape and/or situation being the size of Parcel B being below the 18,000 square foot minimum lot size as a result of the layout and eventual use of Prospect Street by the Town of Manchester. This produced the unusual difficulty and/or unreasonable hardship for the owner of said property, namely the plaintiff.
The Court further finds that the relief of this variance can be granted without impairment of the integrity of the Zoning Regulations and without substantial detriment to the public welfare. There has been no evidence presented that traffic, or any other element of the environment at this location would be adversely affected. There is also no evidence that this one variance if granted would impair the integrity of the regulations.
The plaintiff has sustained his burden of showing that special circumstances attached to the property which do not generally apply to other property in the same neighborhood. The special circumstances are the reduction of the lot size because of the Town's action in laying out and using Prospect Street. There is no evidence that any of the other lots in the area have been adversely affected by the laying out of Prospect Street and the taking of the plaintiff's land.
As for the integrity of the regulations, that goes to what harm would be done to other lots in the neighborhood, and the answer is none. Plaintiff offered at the ZBA hearing Exhibit H which is a Planmetric map of the Town of Manchester and on page 9 of the transcript of the Public Hearing, ROR 2, Attorney David Golas representing the plaintiff described said map showing that the properties around the plaintiff's property are CT Page 12458 less than 12,000 square feet ranging from 6,676.25 square feet up to 11,495.33 square feet with one at 15,432.58. Certainly, they are all under the 18,000 square foot minimum lot requirement, and there is no indication that it was the action of the Town that resulted in these areas being as small as they are. The plaintiff's lot, Parcels B and A, are the only lots affected by the laying out of Prospect Street. 130 Prospect Street to the north of the plaintiff's property is the one with 15,432.58 square feet but it is not affected by the curve nor are any of the properties on the other side of Prospect Street affected by the curve because Prospect Street on that side is vertical all the way. It should be noted that there is a triangular piece at the intersection of Hackmatack and Prospect Streets that is apparently owned by the Town of Manchester and is known as 150 Prospect Street.
Referring to the language in CGS § 8-6 (a) (3), this Court finds that the variance requested is in harmony with the general purpose and intent of the Zoning Regulations and due consideration would be given to conserving the public health, safety, convenience, welfare and property values. The Court finds that there would be no adverse impact concerning these considerations. Further, the Court finds the conditions especially affect the plaintiff's property but do not affect generally the district in which is it situated. The taking of the land by the Town for Prospect Street and the raising of the minimum square foot requirement to 15,000 feet and then 18,000 square feet are conditions especially affecting plaintiff's property but not affecting generally the district in which it is situated. The Court further finds that the granting of the variance will result in substantial justice being done and the public safety and welfare secured.
Further, the Court finds that the variance if granted would not affect substantially the comprehensive zoning plan. The Court further finds that there is sufficient evidence in the record to support the granting of the variance, and it should have been granted.
2. WERE THE HARDSHIPS SELF-CREATED?
The short answer is "no". First, both counsel and the Court have found no decisions addressing the issue of whether the applicant or the ZBA has the burden of proving that the hardship was self-created or was not self-created. This Court, therefore, in deciding this issue, wouldapparently be the first court to do so. The law puts the burden of proof upon the applicant to prove the hardship. There is nothing in law or logic that mandates that the applicant prove the negative, namely, that it was not a self-created hardship. The opponents of the application have the burden of proving that the application is inadequate because it is a CT Page 12459 hardship that is self-created. It is similar to a special defense in a regular civil action, and the burden would be on the party asserting the special defense. The Court concludes, therefore, that the burden of proofin regard to the issue of self-creation of the hardship is on the ZBA ifit is going to deny the application for that reason.
 In this case, the burden really does not matter since there is abundantevidence in the Record that the hardship was not self-created. As stated above, the hardships were created by the Town of Manchester[2] in laying out Prospect Street and in the Zoning Ordinance/Zoning Regulations in which the minimum lot requirement was raised to 15,000 square feet and then 18,000 square feet where Parcel B is approximately 12,000 square feet, long after the plaintiff and his predecessors in title had taken title to the property and the dwelling had been built which was in 1847.
As to whether the plaintiff's predecessors in title agreed to the taking of the property for Prospect Street or was paid by the Town for the taking, there is no evidence of that, and the answer is, therefore, at least highly speculative. The defendant claims that the burden is on the plaintiff to show that he or his predecessor did not voluntarily or for pay give up the land. The Court has just ruled that the burden to prove a self-creation of a hardship is on the defendant. However, a general knowledge of the law of condemnation or eminent domain, shows that this right of eminent domain existed whether the plaintiff's predecessors gave it up voluntarily or were paid for it. The point is if the Town wanted to exercise its right of eminent domain, the landowner would have no choice but to accept it. This would be hardly self-created. Secondly, the fact that there is no evidence as to exactly what happened is not the fault of the plaintiff. The lack of records of the Town, which admittedly would have been understandable over 160 years ago, (when there were no computers) is not the fault of the plaintiff, and if any blame is to be attached, it is to the municipality for failure to file a certificate of taking or any other specific documents showing how the Town acquired Prospect Street as it is now laid out. The plaintiff should certainly not be penalized for the lack of information which should be in the custody of the Town of Manchester.[3]
For these reasons, this Court finds that the hardship was not self-created.
 CONCLUSION
This Court finds from the totality of the evidence that the decision of the ZBA was arbitrary, illegal or in abuse of its discretion. Accordingly, the plaintiff's appeal is sustained, the action of the ZBA CT Page 12460 in denying the variance is null and void, and the said ZBA is directed to grant plaintiff's application.
Rittenband, JTR