[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal from an approval of a variance for an undeveloped building lot located in a residence A zone at 506 Tunxis Hill Road Cut-off, Fairfield. The court has reviewed the entire record, including the briefs of the parties, and heard argument on April 12, 2001. The following constitutes the court's findings and memorandum of decision.
This appeal concerns a triangular shaped, undeveloped parcel taxed as a building lot in a residence A zone, located on the northerly side of Tunxis Road in the town of Fairfield. Said parcel measures 155.41 feet by 216.09 feet by 123.7 feet. This parcel is shown on the Fairfield land records map #1394 as lot 50, with a designated street address of 506 Tunxis Hill Cut-Off Road. (Amended Return of Record [Amended ROR], Item 1: Fairfield land records map #1394.) The other lots in the block, as the CT Page 5741-l parcel at issue and the surrounding area, were subdivided to comply with residence B zone requirements. (ROR, Item 13: Fairfield town plan and zoning commission zoning districts, revised to August 12, 1997.) Effective October 3, 1947, the entire subdivision, including the subject parcel, was changed to a residence A zone. (Amended ROR, Item 1.) The adjacent and surrounding parcels were sold prior to the zone change, leaving the subject parcel as the sole remaining lot. (Amended ROR, Item 2: deeds.) All lots of the subdivision, approximately 74, have been sold and built upon; only the subject lot remains undeveloped. The land from the subject lot extending south and southwesterly several blocks, and southeasterly a few more blocks is still zoned as a residence B zone. (ROR, Item 13.) A commercially designed district is located across the street from the subject property. (ROR, Item 13.) In that district is a shopping center containing a Blockbusters video store, a jewelers and a deli, among other businesses.
The owner of the property is defendant/applicant Roger Kuhn, as trustee of the Gasper W. Kuhn, Jr. Revocable Trust Agreement.[1] Those who own land that abuts or is in within a radius of one hundred feet of the land involved in any decision of a zoning board of appeals are statutorily aggrieved. See General Statutes (Rev, to 2001) § 8-8 (a)(1). Plaintiff Steven Venezia alleges that he is the owner of property located at 113 Whitewood Drive, Fairfield, which property is adjacent to and abuts the subject property on the rear property line. (Return of Record [ROR], Item 10: complaint, ¶ 3; Item 11: verbatim transcript of hearing, July 1, 1999, p. 5.) At argument, the parties acknowledged that Venezia owns property abutting the subject property. Accordingly, the court finds that the plaintiff has met his burden of establishing statutory aggrievement.
By application dated May 25, 1999, Kuhn applied for a variance from sections 5.1.1 and 5.2.4 of the Fairfield zoning regulations to allow the reduction of the minimum square required on his lot from seventy-five (75) feet to sixty-two (62) feet; the reduction of the street line setback from thirty (30) feet to twenty-two (22) feet and the reduction of the minimum required rear property line setback from thirty (30) feet to twenty-five (25) feet. (ROR, Item 11, p. 1; Item 1: proposed house plan; Item 4: proposed house plan presented at public hearing.) With his application, Kuhn submitted plans for a proposed raised ranch, single family home measuring 42.8 feet long by 25.5 feet wide. (ROR, Item 1.) The matter was discussed at a July 1, 1999 public hearing and the board, without formally stating the reasons for its decision, approved the variance request on the same date. (ROR, Item 8: notice of decision.) CT Page 5741-m
Per General Statutes (Rev, to 2001) § 8-8 (b), an appeal from a zoning board of appeal's decision "shall be commenced by service of process . . . within fifteen days from the date that notice of the decision was published. . . ." The chairperson of the board and the clerk of the municipality shall be included in such service. See General Statutes (Rev, to 2001) § 8-8 (e). Notice of the board's decision was published in the Fairfield Citizen on July 9, 1999.[2] (ROR, Item 10: complaint, ¶ 2.) On July 22, 1999, the writ, summons and citation for this appeal were served upon defendants Patricia Rock, clerk of the board, Robert Brennan, commissioner of the board and Marguerite Toth, Fairfield town clerk. (Sheriff's return.) Defendant Kuhn was also served on July 22, 1999. (Sheriff's return.) Accordingly, the court finds the appeal was timely.
"In reviewing the actions of a zoning board of appeals we note that such a board is endowed with a liberal discretion, and its [actions are] subject to review by the courts only to determine whether [they were] unreasonable, arbitrary or illegal. . . . The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision. . . . In an appeal from the decision of a zoning board, we therefore review the record to determine whether there is factual support for the board's decision, not for the contentions of the applicant." (Internal quotation marks omitted.) Francini v. ZoningBoard of Appeals, 228 Conn. 785, 791, 639 A.2d 519 (1994).
"If a zoning authority has stated the reasons for its actions, the reviewing court ought to examine the assigned grounds to determine whether they are reasonably supported by the record and pertinent to the considerations the authority was required to apply pursuant to the zoning regulations. . . . Where a zoning board of appeals does not formally state the reasons for its decision, however, the [reviewing] court must search the record for a basis for the board's decision." (Citation omitted; internal quotation marks omitted.) Giarrantano v. Zoning Boardof Appeals, 60 Conn. App. 446, 451-52, 760 A.2d 132 (2000). "The court's function is to determine on the basis of the record whether substantial evidence has been presented to the board to support its findings." (Internal quotation marks omitted.) Conetta v. Zoning Board of Appeals,42 Conn. App. 133, 138, 677 A.2d 987 (1996). The court must search the record to determine whether it contains substantial evidence from which the ultimate finding could be inferred. See Grillo v. Zoning Board ofAppeals, 206 Conn. 362, 369, 537 A.2d 1030 (1988). "Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been CT Page 5741-n reasonably and fairly exercised . . . ." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, 233 Conn. 198, 206,658 A.2d 559 (1995). The court in the instant matter was required to search the record as the board failed to formally state the reasons for its decision.
A zoning board of appeals may grant a variance only when two basic requirements are met: "(1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." (Internal quotation marks omitted.) Grillo v. Zoning Boardof Appeals, supra, 206 Conn. 368. Proof of exceptional difficulty or unusual hardship is a prerequisite for the granting of a zoning variance. See Point O'Woods Assn., Inc. v. Zoning Board of Appeals,178 Conn. 364, 368, 423 A.2d 90 (1979). "A mere economic hardship or a hardship that was self-created, however, is insufficient to justify a variance. . . ." Bloom v. Zoning Board of Appeals, supra, 233 Conn. 208. "In granting a variance, the board is presumed to have acted fairly and upon valid reasons unless the contrary is shown. . . ." Burlington v.Jencik, 168 Conn. 506, 508-09, 362 A.2d 1338 (1975).
Venezia appeals from a decision of the board granting Kuhn's application for a variance permitting reductions in the front and rear property line setbacks and the minimum square of a proposed single family dwelling. Venezia argues that: 1) the board erred in granting the variance when there was no evidence of a hardship or that any hardship was self-created; and 2) Kuhn's attorney's admission at the board hearing that Kuhn could build a structure on the property without the need for a variance is fatal to Kuhn's claim of hardship.
In opposition, Kuhn argues that his property was subject to a unique hardship not of his own doing because the hardship originated in the application of the regulation to his parcel and that he was properly granted a variance.[3] The board argues that: 1) the board's granting of the variance was sound and reasonable; 2) the variance will not substantially effect the comprehensive zoning plan in which the property is situated because it is undisputed that the property is situated in a residential neighborhood that is already well-developed; and 3) Kuhn's hardship was not self-created because Kuhn's predecessor had a right to seek a variance and Kuhn made the requisite showing of hardship.
The court has examined the entire record. The evidence adduced at the hearing before the board shows the following. The subject property is CT Page 5741-o located within a subdivision that was approved by the Fairfield zoning commission in 1944. (ROR, Item 3: application, p. 2; Amended ROR, Item 1.) At that time, the property was located in a residence B zone. (ROR, Item 3, p. 2; Item 11, p. 2.) The lot has always conformed to the requirements of a B zone.[4] (ROR, Item 3, p. 2; Item 11, p. 2.) The subdivision was later adopted by the commission on March 11, 1947, and recorded with the Fairfield land records clerk on March 12, 1947. (Amended ROR, Item 1.) On September 22, 1947, the Fairfield plan and zoning commission amended the zoning regulations to change the zoning designation of the subject parcel and the surrounding neighborhood from a residence B zone to a residence A zone, effective October 3, 1947. (Amended ROR; Item 1.)
The present owner, Kuhn, inherited the property from his father.[5]
Kuhn's predecessors, Gasper and his sister, Mary, were the original subdividers in 1944. (ROR, Item 3, p. 2; Item 11, p. 4.) At the time of the zone change, Kuhn's predecessors had conveyed away the other lots surrounding the subject parcel; (Amended ROR; Item 2: deeds; ROR, Item 11, pp. 2, 4); and after the zone change there was not enough land to conform to the residence A zone setback and minimum square requirements.[6] Kuhn's predecessors never requested a variance for the subject parcel.
A zoning board of appeals may grant a variance only when two basic requirements are met. Accordingly, the court will address each of these requirements separately. Comprehensive Zoning Plan
The first basic requirement in granting a variance is that the variance must be shown not to effect substantially the comprehensive plan of zoning. See Grillo v. Zoning Board of Appeals, supra, 206 Conn. 368. The comprehensive zoning plan consists of the zoning regulations together with the zoning map established pursuant to such regulations. See Burnhamv. Planning and Zoning Commission, 189 Conn. 261, 267, 455 A.2d 339
(1983). "The comprehensive plan is to be found in the scheme of the zoning regulations themselves." Adolphson v. Zoning Board of Appeals,205 Conn. 703, 713, 535 A.2d 799 (1988). "A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential use of the properties. . . . The requirement of a comprehensive plan is generally satisfied when the zoning authority acts with the intention of promoting the best interests of the entire community." (Citation omitted; internal quotation marks omitted.) First Hartford Realty Corp. v. Planning and ZoningCommission, 165 Conn. 533, 541, 338 A.2d 490 (1973). CT Page 5741-p
In enacting the zoning change in 1947, the zoning commission of Fairfield stated that "[t]his change was deemed advisable because this land is well adapted for Residence "A" Zone, and being undeveloped [the regulation affected a large area beyond that of Tunxis Hill Cut-Off Road], it is a logical time to make the change in order to conserve landvalues and afford proper protection for future development." (Emphasis added.) (Amended ROR, Item 3: Amendment of Zoning Districts, effective October 3, 1947, received for record December 16, 1948, p. 3.)
An examination of the record of evidence presented to the board shows that Kuhn's proposed improvements do not negatively impact the area or effect substantially the comprehensive zoning plan for the following reasons. The subject lot is completely surrounded by developed B zone lots; (Amended ROR, Item 1); with the exception of the commercially designed district located across the street. (ROR, Item 13.) There are no neighborhoods built out to A zone requirements nearby. (ROR, Item 13.) Also, the only other dwelling fronting Tunxis Hill Road Cut-Off on the block is identical in size and shape to Kuhn's proposed single family, raised ranch structure. (ROR, Item 11, p. 2.) Thus, the court finds that the record contains substantial evidence to meet the first basic requirement to granting a variance.
Unusual Hardship
The second basic requirement in granting a variance is that adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. See Grillo v. Zoning Board of Appeals, supra,206 Conn. 368. "The hardship which justifies a board of zoning appeals in granting a variance must be one that originates in the zoning ordinance . . . and arises directly out of the application of the ordinance to circumstances or conditions beyond the control of the party involved." (Citations omitted.) Pollard v. Zoning Board of Appeals, 186 Conn. 32,39-40, 438 A.2d 1186 (1982).
As previously discussed, the subject lot is completely surrounded by developed B zone lots, with the exception of the shopping center located across the street; there are no neighborhoods built out to A zone requirements nearby and the only other dwelling fronting Tunxis Hill Road Cut-Off in that block is identical in size and shape to Kuhn's proposed single family, raised ranch home. The subject lot has always conformed to the minimum requirements of a residence B zone and, with the exception of the minimum square, the proposed structure is well within the B zone CT Page 5741-q regulations.[7] Prior to the 1947 change in zones, Kuhn's predecessors conveyed all of the property surrounding this parcel. (Amended ROR, Item 2.) Accordingly, under the A zone regulations, Kuhn is able only to build a structure with external measurements not exceeding 49 feet long by 12.5 feet wide. The subject parcel is located in a residential subdivision. The court finds the board could have reasonably determined that limiting the parcel located in a residential district to a structure of such small dimensions would not further the stated purpose of conserving land values and affording proper protection for future development. See Bloom v.Zoning Board of Appeals, supra, 233 Conn. 206 ("decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised"). Therefore, the court finds that the record contains substantial evidence to infer the ultimate finding that the particular hardship or unnecessary difficulty claimed by defendant/applicant Kuhn was the insufficiency of the property to support a reasonable, practical and viable structure given the A zone regulations.
This hardship originates as a result of the amended zoning district and arises directly out of the application of the amendment to the subject lot. Prior to the enactment of the amendment, Kuhn's predecessors conveyed all the surrounding property to the subject lot. This is not a self-created hardship situation. See Bloom v. Zoning Board of Appeals, supra, 233 Conn. 208. "[I]if the hardship is created by the enactment of a zoning ordinance and the owner of the parcel could have sought a variance, then the purchaser has the same right to seek a variance and, if his request is supported in law, to obtain the variance." See JohnnyCake, Inc. v. Zoning Board of Appeals, 180 Conn. 296, 300-01, 429 A.2d 883
(1980). Accordingly, because Kuhn's predecessor could have applied for a variance, Kuhn had this ability. Given the existing setback requirements on the parcel under the 1947 amendment, the record contains substantial evidence that adhering to the strict letter of the zoning change would cause Kuhn unusual hardship that is unnecessary to the carrying out of the general purpose of the zoning plan.
"It is well-settled that courts are not to substitute their judgment for that of the Board, and that the decisions of local boards will not be disturbed as long as honest judgment has been reasonably and fairly made after a full hearing . . . as the credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency." Stankiewicz v. Zoning Board of Appeals,15 Conn. App. 729, 731-32, 546 A.2d 919 (1988), aff'd, 211 Conn. 76,556 A.2d 1024 (1989). Here, there is substantial evidence in the record that supports the board's granting of the variance. Accordingly, the plaintiff's appeal is dismissed. CT Page 5741-r
COMERFORD, J.