[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I — BACKGROUND
CT Page 14781
John Carberry and others appeal from a decision of the Zoning Board of Appeals of the City of Stamford (ZBA) granting a variance to Martha Howard of the front yard set back requirements contained in the Stamford Zoning Regulations. This appeal raises issues of the type and degree of hardship required for a variance, the public notice hearing requirements under General Statutes § 8-7. and statutory and local regulatory requirements for written reasons for a grant of a variance.
On November 8, 1999, Howard applied to the ZBA for a variance to allow her to construct a single family residence on a vacant lot 27.7 feet from the street in lieu of the 40 foot requirement for the R-I0 zone in which the lot was located. (Return of Record [ROR] Item I.) A public hearing was held by the ZBA. ([Transcript of December 15, 1999, hereafter "Tr. I"] ROR Item 17) The hearing resumed on January 12, 2000. ([Transcript of January 12, 2000 proceedings, hereafter "Tr. II"] ROR Item 18) On the latter date, the ZBA voted unanimously to grant the application. (ROR Items 19 and 20)
 II — JURISDICTION
The pleading and proving of aggrievement by the plaintiff are a prerequisite to the jurisdiction of the Superior Court over zoning appeals. Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184 (1996). General Statutes § 8-8 (a) provides that an aggrieved person in an appeal from a zoning board of appeal decision includes anyone owning land within a one hundred foot radius of the property involved in the case. Carberry alleged that he owned property within the above distance from Howard's property. (Complaint ¶¶ 1, 8.) His testimony to that effect at the hearing of this appeal was unchallenged. Therefore, the court finds Carberry to be an aggrieved person.
Gen. Stat. § 8-8 (b) requires that zoning appeals must be taken within fifteen days of the publication of the decision. There is no direct evidence of when the ZBA's decision on the Howard application was published in the newspaper. The record contains an indication that notice was scheduled to be published on January 27, 2000 (ROR Item 21) and there is no evidence it was published any earlier than that date. Service of the appeal was accomplished on February 11, 2000. The court finds the appeal timely, and the court has jurisdiction over the appeal.
 III — FACTS
Howard owns unimproved property known as lot 22 in an area of Stamford north of the Merritt Parkway and east of High Ridge Road (Route 137) which was subdivided for residential purposes in 1964. (ROR Item 7.) The lot fronts on a short cul-de-sac known as Dzamba Grove which extends off CT Page 14782 Somerset Lane. The back of the lot borders on the Rippowam River. Slightly over 10,000 square feet in size, the lot is roughly rectangular in shape except that the northeast portion is substantially reduced by the outer circumference of the turn around area at the end of Dzamba Grove, so that while the western edge of the property runs 110 feet from the river in back to Ozamba Grove in front, the depth of the lot on its eastern side is only 42 feet. No town sewers are available. (ROR Item 1.)
The property is subject to an easement barring any fill or encroachment within 25 feet of the river and 10 foot to a wide storm drainage easement on the eastern portion of the lot running from the cul-de-sac to the river. (ROR Item 1.) The lot is located in an R-10 zone permitting single family residences with improvements limited to 20% coverage and minimum front set-back requirements of 40 feet from the street. (Stamford Zoning Regulations, Table III, Appendix B).
While the record is unclear as to whether Howard lives there presently, she and her late husband resided on the lot adjacent to lot 22 for about thirty years, and she and her family have owned both lots for that period. (Tr. I, 3) As stated by her counsel, Howard's objective is to build a residence on lot 22 to enable her to sell it. (Tr. I, 6.) She engaged both an architect and an engineer to develop plans for the design and siting of the proposed house and septic system on the lot. (Tr. I, 8.) The plans for the lot show a two bedroom house with a lot coverage of 1064 square feet and an attached deck facing the river of an additional 204 square feet. (ROR Item 1.) The plans also indicated that the northeast corner of the structure, as proposed, would be 27.1 feet from the street line where it arcs toward the river as part of the turn around area. (Id.)
Howard applied for a variance. Notice of the application and hearing thereon before the ZBA was published and mailed. (ROR, Item 2.) At the December 15, 1999 hearing, Howard's attorney set forth the reasons the proposed plan was designed so as to require a variance. Several neighbors spoke voicing support, objections, and concerns. The ZBA determined to allow Howard to present more specificity as to the nature of the proposed building and to continue consideration of the application to the January 12, 2000 ZBA meeting. On January 12, 2000, the ZBA heard more information on the variance application and, after discussion, approved it. (ROR. Items 19, 20.)
 IV — THE PLAINTIFF'S CLAIMS
Carberry appeals from the decision of the ZBA and asserts three grounds for reversing the grant of a variance. First, Carberry contends that the CT Page 14783 ZBA acted arbitrarily, illegally and abused its discretion by granting the requested variance in contravention of the strictures of Gen. Stat. § 8-6 in that there was insufficient evidence that the zoning ordinance caused exceptional difficulty or unusual hardship. Second, the plaintiff asserts that the ZBA violated a state statute and the Stamford Zoning Regulations by failing to state in the record its reasons for granting the variance. Third, it is asserted that the ZBA violated the law by failing to publish in the newspaper notice of the second day of hearing on the Howard application on January 12, 2000.
 V — APPLICABLE LEGAL STANIDARDS
General Statutes §§ 8-6 (a)(3) authorizes the ZBA to grant a variance:
 . . . where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of [a regulation] would result in exceptional difficulty or unusual hardship . . .
The standard to be applied by a Superior Court in reviewing the grant of a variance by a zoning board is whether the board's action was arbitrary, illegal or an abuse of discretion. Bloom v. Zoning Board ofAppeals, 233 Conn. 198 (1995). The court is not to substitute its own judgment for that of the ZBA, and local board decisions should not be disturbed as long as the board's honest judgment has reasonably and fairly been exercised after a full hearing of the facts and issues. Id. The burden of proof that a zoning board of appeals acted improperly is on the party seeking to overturn the board's decision. Francini v. ZoningBoard of Appeals, 228 Conn. 785 (1994).
 VI — DISCUSSION
A. Hardship
Carberry contends that the Howard application for a variance failed to meet the statutory test in Gen. Stat. § 8-6 (a)(3) noted above of "exceptional difficulty or unusual hardship". He points out that it was conceded by Howard's attorney at the hearing that the existing zoning regulations did not preclude the applicant from constructing a residential structure on Lot 22 (see Tr. I, 17-18) and that the variance was sought to allow Howard to build a house which could be sold for more money. Carberry relies heavily on Grillo v. Zoning Board of Appeals,206 Conn. 362 (1988) for the proposition that the inability to realize financial advantage is not an appropriate basis for a finding of hardship to sustain the granting of a variance. In Grillo the applicant owned two CT Page 14784 adjacent lots which became slightly undersized for building lots after the enactment of zoning regulations. The applicant owned a house which was entirely located on one lot; the other lot, for which a variance was sought, was vacant. Noting that the vacant lot added value to the applicant's house as a side yard, the Grillo court stated:
 Unquestionably the lot would have a much higher value, estimated at $26,000 by an appraiser testifying for DeFrank at the hearing, if it could be used as a building lot. A zoning regulation that prevents land from being used for its greatest economic potential, however, does not create the exceptional kind of financial hardship that we have deemed to have a "confiscatory or arbitrary" effect.
Id. 370. Carberry points out that unlike the situation in Grillo, Howard is able to build on her adjoining lot and therefore the financial detriment to her is less than was found insufficient in Grillo.
There were additional facts that went into the Grillo decision. First. the court noted that there was no evidence from which to conclude that the applicant was in a situation different from others in the neighborhood with similar undersized lots. Second, it had not been established that the applicant could not qualify the vacant lot as a building lot under an existing provision of the zoning regulations. The court concluded therefore that:
 . . . the trial court erred in finding sufficient evidence of financial hardship to support the granting of the variance. With respect to the claims of hardship based upon DeFrank's ownership of the vacant lot as separate from her adjoining property, our view is that, until it has been ascertained that the lot does not satisfy the requirements of 23-5.1 for a building lot in existence prior to Zoning and that any hardship imposed on her is different from that suffered by other property owners in the zone, these circumstances provide no basis for a claim of hardship imposed by the zoning regulations.
Id. 373.
Howard and the ZBA argue that Grillo does not provide the sole test for establishing the hardship required by Section 8-6. While the defendants do not cite any Supreme Court authority for this proposition, the court concludes that the Grillo holding does not encompass the full scope of CT Page 14785 what may be legally cognizable hardship under the statute. The accepted formulation for allowance of a variance is: (1) the variance does not substantially affect the comprehensive plan of zoning, and (2) adherence to the strict letter of the zoning regulation is shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. See e.g. Smith v. Zoning Board of Appeals, 174 Conn. 373
(1978); Francini v. Zoning Board of Appeals, supra; Bloom v. Zoning Boardof Appeals, supra. Indeed, the Grillo court employed the same formulation.
In Bloom v. Zoning Board of Appeals, supra, the Supreme Court discusses hardship in the following language:
 In order to justify a variance, the hardship must differ from the conditions that generally affect the property owners in the same area and it must arise from circumstances beyond the control of the property owner seeking the variance. Smith v. Zoning Board of Appeals, supra, 174 Conn. 327. The hardship must originate in the regulation or ordinance and arise from the application of the regulation or ordinance to the subject property. Pollard v. Zoning Board of Appeals, 186 Conn. 32, 39-40, 438 A.2d 1186 (1982); Whittaker v. Zoning Board of Appeals, supra, 179 Conn. 658. Financial considerations are relevant only if the application of the regulation or ordinance practically destroys the value of the property for any use to which it may be put and the regulation or ordinance as applied to the subject property bears little relationship to the purposes of the zoning plan. Grillo v. Zoning Board of Appeals, supra, 206 Conn. 369; Carlson v. Zoning board of Appeals, 158 Conn. 86, 89-90, 255 A.2d 841 (1969).
Bloom, supra 209.
The very language of Section 8-6 (a)(3) makes reference to conditions "especially affecting" a parcel of land but not affecting other parcels in the area as being a basis for a hardship which may justify a variance. See Belknap v. Zoning Board of Appeals, 155 Conn. 380 (1967). Topographical or other physical conditions on a property may be the basis for a hardship, as long as the conditions are not present in surrounding properties. Stillman v. Zoning Board of Appeals, 25 Conn. App. 631, cert denied 220 Conn. 923 (1991). (placement of well and septic systems made setback requirements "exceptionally burdensome") CT Page 14786
Howard and the ZBA rely on the decision of the Appellate Court inGiarrantano v. Zoning Board of Appeals, 60 Conn. App. 446 (2000). In that case the landowner-applicant sought variances from setback and buffer requirements which in conjunction with the narrowness of the land parcel in question and its topography, would leave a very small building area for a proposed hotel. There was evidence in the record that the applicant could make other use of the property without the variances, and the applicant argued that while the enforcement of existing regulations would not destroy the value of the property, it would deprive him of the reasonable commercial use of the land. The court held that the proper scope of the ZBA's inquiry into hardship was whether the application of the zoning regulations prevented the applicant from the reasonable use of his land as allowed by the zoning plan (in this case, commercial). The Appellate Court concluded there was sufficient evidence of such deprivation in the record to find that the ZBA had not acted arbitrarily or unreasonably in granting the variances.
This court concludes that Carberry places too much weight on Grillo. While the potential financial hardship there was substantial, the Supreme Court, in fact, determined that hardship different from the surrounding neighbors had not been established, nor was hardship established because it had not been determined whether the vacant lot was or was not eligible for building under another regulation. Furthermore, the court notes that the Appellate Court in Stillman characterized the Grillo language as being applicable
 "In the extreme situation where the application of a regulation renders property practically worthless, and that loss of value alone amounts to a hardship . . . Although satisfying this test is a valid means of establishing a hardship, it is not exclusive."
Stillman v. Zoning Board of Apoeals, supra 636.
In this case, the record contains substantial evidence of sufficient hardship of a kind different than that affecting others in the neighborhood. First, the very shape of the lot with the outer circumference of the Dzamba Grove turn-around reducing the depth of the eastern portion of lot 22 by about sixty percent is a feature unique in the area which significantly affects the placement of any residence thereon. (ROR, Item 1.) Second, the curved boundary of the lot which faces the turn around area, when coupled with the standard forty foot setback requirement for front yards creates an even more limited site. This is so even though the set back requirements affect an area which is, arguably, more side yard than front. Third, the drainage easement on the east side of the lot and the fill and encroachment restrictions CT Page 14787 extending twenty-five feet in from Rippowam River further restrict the site in a manner not applicable to other lots. The net effect of these site conditions is to limit any area for the building of a residence to a narrow portion of the lot.
Howard has conceded that without a variance some residence could be built on the lot (Tr. I, 17-18; Defendant Howard's Brief, 8.) The record supports her contention that the residence that could be built "as of right" would be small, in a style different than the surrounding residences (i.e. a one or one and a half story ranch house with no garage) with its front canted toward the cul-de-sac turnaround rather than the street. (Tr. I, 17-19; ROR Item 22.).[1]
The proposed plan attached to the Howard application for a variance shows a residence of two stories, still quite small at less than 2,000 square feet of living space facing the street (ROR, Items 1; Tr. I, 20.) In recognition of the fill and encroachment easement and the existence of wetlands near the river, the residence is planned to be situated as far north of the river consistent with the forty foot front setback requirement and the desirability of placing the septic system in the front yard as far as possible from the River and the wetlands. In fact, the Environmental Protection Board, which had no objection to the requested variance, stated the Howard application "has the desirable effect of lessening encroachments toward known wetland, watercourse and flood prone areas. (ROR, Item 4.)
Based on the foregoing, there is substantial evidence in the record to meet the standards for a variance set forth in Gen. Stat. § 8-6
(a)(3) and the Supreme and Appellate Court decisions thereunder. First, there was a basis for the ZBA to find that, without the variance, Howard would suffer a hardship different in degree and nature from conditions generally affecting the properties near Dzamba Grove. The hardship arises from the unique boundary lines of the lot as well as the constraints of two publicly mandated easements not present on other lots. Second, while the claimed hardship did not destroy the value of the property, the restraints on the property did act to deprive Howard of the reasonable residential use of her property in that any house built without a variance would be markedly smaller than, and incongruous with, the surrounding properties. Giarrantano v. Zoning Board of Appeals, supra. Third, the Board could reasonably have found that the grant of the front setback residence would not impair or undercut the general zoning plan. There was evidence to support Howard's contention that the location where the setback was at issue could reasonably be interpreted more as a side yard than a front yard area. In addition, there was evidence which the ZBA very carefully considered that the granting of the variance would enhance the area by permitting the construction of a residence more in CT Page 14788 keeping with the neighborhood. Record evidence shows that the surrounding houses in the neighborhood were two story structures with approximately 3,000 to 3,500 square feet of living area. (Tr. I, 25, 32.)
In consideration of the above, the court finds that the determination by the ZBA that sufficient hardship exists was not arbitrary, illegal or an abuse of discretion.
B. The January 12, 2000 Hearing and the Notice Requirement
Gen. Stat. § 8-7 sets forth the requirements for public notice of ZBA hearings on applications for a variance. The plaintiff does not take issue with the public notice given for the initial hearing on December 15, 1995, and indeed, the record reflects that notice was given in the newspaper in accordance with the statute. (ROR Item 2.)
Plaintiff asserts that the notice given of the January 12, 2000 meeting was defective because there was no newspaper publication of the fact that the Howard application would be considered on that date. The defendants concede there was no newspaper notice but contend that it was not required since proper notice was given of the December 15, 1999 hearing.
To decide this issue, it is necessary to review what occurred on December 15, 1999. At that hearing, Howard presented the variance application and responded to inquiries from the ZBA. Several neighbors, including Carberry, were present and commented on the application. Howard's attorney then suggested that the hearing be "continued" to a January meeting to permit the development of more detailed elevation and plans for the proposed residence so that the ZBA and neighbors would have a more complete idea of the proposal. (Tr. I, 42-43.) As one ZBA member stated, the deferred or continuation would allow the board "to see the very nature of this structure and whether or not the neighbor's opposition, namely that it would not fit in, we'll know if that has validity" (Tr. I, 49.) Howard's attorney in response to a direct question stated he was not going to propose a changed plan. (Tr. I, 50, 51.) The ZBA chairman was concerned that if the application was altered between December and January, there would have to be new newspaper notice. (Tr. I, 51.) When assured that the application would not be changed, the matter was continued to the January 12 date and all present on December 15 were so advised. (TrI, 58.) Howard's attorney undertook to notify all neighbors, whether present on December 15 or not, of the January 12 date. (ROR, Item 10.) The ZBA chairman then recessed the meeting until January 12.
The failure to give the notice required by statute is a defect that affects the jurisdiction of the court. Wright v. ZBA of New Fairfield,
CT Page 14789174 Conn. 488 (1978); Koskoff v. Planning Zoning Commission of Haddam,27 Conn. App. 443 (1992). This court has not found, nor has it been alerted to, any existing precedent on this point. The court finds, however, that the January 12, 2000 proceeding was not a new hearing on the application, but a continuance of the initial hearing that took place on December 11, 1999 which was not completed and therefore recessed on that date. Howard did not file a new application, nor was the existing application amended. Requiring new newspaper publication of notice for a hearing that is continued beyond the original date would place an undue burden on local boards and commissions which as a general practice meet during the evening hours of the work week. There are many conceivable and appropriate reasons for a zoning board of appeals not to complete a hearing on a matter in a single weekday evening. If each continuation of a hearing imposed the necessity of a new newspaper publication schedule, it would severely constrain the scheduling of new dates and slow down the process. The court holds that the hearing on the Howard application on January 12, 2000 was not a new hearing but a continuation of a hearing recessed in December and did not require a newspaper publication.
C. Stated Reasons for Decision
Carberry's next contention is that the ZBA failed to state its reasons for granting the variance in violation of General Statutes § 87[2]
and Section 19 2.2a[3] of the Stamford Zoning Regulations.
As a factual matter, the record does not include any place where the ZBA complied with Section 8-7 by stating its reasons or describing specifically in writing the exceptional difficulty or unusual hardship justifying the variance. Similarly, there is nothing which complies with the written findings requirement of Regulation 19-2.2. On the other hand, the basis for the ZBA's decision is reasonably well described in the transcript of its hearing and deliberations. (Tr. II, 46-59.)
The Connecticut Supreme Court has stated that it is desirable for zoning board of appeals to state its reasons for granting a variance; however, it has not seen fit to make the failure comply with Section 8-7
to do a basis for rejecting a board's decision. Hovanesian v. ZoningBoard of Appeals, 162 Conn. 43 (1971). In the absence of a statement of reasons, the Supreme Court has held repeatedly the court must search the record to ascertain whether there is a basis for board action. Id., see also Grillo v. Zoning Board of Appeals, supra; Bloom v. Zoning Board ofAppeals, supra.
Carberry, however, has pointed to a second line of cases in which the Supreme Court has upheld local zoning regulations requiring a written justification of a board decision such as the Stamford Regulation 19-2.2. CT Page 14790 In Gross v. Planning and Zoning Board of Appeals of Town of Greenwich,171 Conn. 326 (1976) the Supreme Court considered a local regulation requiring that before a variance could be granted, the zoning board of appeals must make certain "written findings in its minutes" about the special circumstances giving rise to the variance and that the variance could be granted without impairment of the zoning regulations. The court stated:
 "It is difficult to conceive of more unequivocal language than that contained in 28a(3) setting forth a prerequisite of written findings before a variance can be granted. In the present case, the board made no specific finding that exceptional difficulty or unnecessary hardship would result to the owner of the property from the strict enforcement of the regulations. It described no special circumstances in detail which do not apply to other properties in the area and which constitute a hardship to the applicants, nor did it find that relief could be granted without detriment to the public welfare, or without impairment to the integrity of the regulations. Moreover, such findings cannot be implied from the minutes or from other portions of the record before us. In granting the variance the board ignored the requirements of the Greenwich zoning regulations, and the variance, therefore, was not properly granted.
Id., 327-328 (citations omitted.) See also Carlson v. Zoning Board ofAppeals, 158 Conn. 86 (1969).
Neither the Hovanesian line of cases, nor the Gross line make any reference to each other. While it may seem anomalous that the Supreme Court could treat the failure to give the written reasons required by state statute in one fashion and the failure to provide the written justification required by local regulation in another, that does seem to be the present state of the law.
After reviewing the transcript of the ZBA's deliberation (Tr. II, 46-59) the court finds the ZBA to have applied the proper criteria and to have determined that hardship exists and that granting a variance would not impair the general zoning scheme. As noted above, there is substantial evidence to support that determination. Furthermore, the ZBA carefully tailored its decision by imposing the condition that construction of the proposed residence conform to the plans submitted with the application. (ROR, Item 19.) In the end, however, the ZBA did not conduct itself in CT Page 14791 conformance with the Stamford Zoning Regulations in that it did not put into the record the "specific written findings" regarding the four conditions set forth in Stamford Zoning Regulations 19-2.2 (set out in full at note 3 supra).
While the court might prefer either to consider this a technical oversight not deserving of serious consequences, or to treat it similarly as Hovanesian, Grillo and Bloom the Supreme Court precedent, as this court reads it, does not permit such a result. Furthermore, the court has not been provided any information to enable it to determine whether it was a mere oversight in this case, or whether it is a practice of the ZBA to ignore its regulation and not to make such findings. The court also notes that while Carberry initially briefed this point at some length, neither the ZBA nor Howard saw fit to respond to his arguments in any fashion in their opposing briefs. In the final analysis, the short answer is that the ZBA can abide by its own regulations or amend them. It cannot, as it has done here, ignore them.
 VII — Remedy
For the reasons set forth in Part VI-C the appeal is sustained. The court orders this matter remanded to the ZBA with instructions to comply with Regulation 19-2.2 by setting forth in writing the findings required by that regulation. While the court clearly has the authority to overturn the granting of the variance; see Gross v. Planning and Zoning Board ofAppeals Town of Greenwich, supra; it also believes it has the authority to impose the less drastic remedy ordered above pursuant to Gen. Stat. § 8-8k. The latter authority is exercised in this case because, unlike Gross, there is evidence in the record that supports the granting of a variance and in those circumstances it seems unnecessarily harsh to penalize Howard for the error of the ZBA whether the error was the result of inadvertence or consistent practice.
ADAMS, J.